IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BOBBIE LEIGH ELLIS; AND CHARLES
GABRIEL ELLIS, FREDRICK WALLACE
ELLIS, AND CAMERON OLIVIA ELLIS,
MINOR CHILDREN BY NEXT FRIEND
AND MOTHER, BOBBIE LEIGH ELLIS                    PLAINTIFFS

VS.                              CIVIL ACTION NO. 5:06-cv-33(DCB)(JMR)

O. J. PACKNETT, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS
DEPUTY SHERIFF OF WILKINSON COUNTY,
MISSISSIPPI; REGINALD JACKSON,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS SHERIFF OF WILKINSON
COUNTY, MISSISSIPPI; AND WILKINSON
COUNTY, MISSISSIPPI                               DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant O. J. Packnett's Motion for Partial Summary Judgment **(docket entry 66)**, the plaintiffs' motion to strike the affidavit of Patricia Delaney **(docket entry 91)**, the defendants Reginald Jackson and Wilkinson County's Motion for Summary Judgment **(docket entry 68)**, and said defendants' Motion in Limine to Exclude Evidence Regarding Prior Incidents Involving O.J. Packnett **(docket entry 62)**. Having carefully considered the motions and responses, the briefs of the parties and the applicable law, the Court finds as follows:

The plaintiffs, Bobbie Leigh Ellis individually and on behalf of her minor children, filed the present action on March 9, 2006. The complaint alleges that the defendant, O. J. Packnett

individually and in his capacity as a deputy sheriff of Wilkinson County, Mississippi, deprived Ellis and her children of their constitutional rights while acting under color of law of the State of Mississippi.[1]   Specifically, Ellis contends that she was unlawfully arrested and subjected to excessive force by Packnett, and that upon her arrest her children were abandoned by Packnett and exposed to danger.

Packnett filed the present motion for partial summary judgment as to the unlawful arrest and abandonment claims, and not the excessive force claim.  Under Fed.R.Civ.P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A nonmoving party may not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion.  If the non-moving party's evidence is merely

_____

[1] Ellis sues Packnett under 42 U.S.C. § 1983, which provides recovery for constitutional deprivations suffered under color of state law.  A plaintiff asserting a claim under § 1983 generally must prove (1) a violation of rights protected by the Federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  The parties do not contest that the "under color of state law" requirement is met in this case.

2

colorable, or is not significantly probative, summary judgment may be granted.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584–88 (1986).

It is not the role of the Court at the summary judgment stage to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The Court must draw all inferences in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, the Court must accept the non-movant's version as true.  Id. at 248.  The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  Finally, it should be noted that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

Packnett asserts the defense of qualified immunity against the plaintiffs' claims.  The defense of qualified immunity represents an "attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interferences in the performance of

their duties as a result of baseless claims." Pueblo Neighborhood
Health Centers, Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988).
An assertion of qualified immunity requires evaluation under the
standard articulated by the Supreme Court in Harlow v. Fitzgerald,
457 U.S. 800 (1982).   In Harlow, the Supreme Court held that
"government officials performing discretionary functions generally
are shielded from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Id. at 818.

> Reliance on the objective reasonableness of an
> official's conduct, as measured by reference to clearly
> established law, should avoid excess disruption of
> government and permit the resolution of many
> insubstantial claims on summary judgment.  On summary
> judgment, the judge appropriately may determine, not only
> the current applicable law, but whether that law was
> clearly established at the time the action occurred.  If
> the law at that time was not clearly established, an
> official could not ... fairly be said to "know" that the
> law forbade conduct not previously identified as
> unlawful.

Id. (footnotes and citations omitted).  In short, the touchstone of
the defense is "objective legal reasonableness."

When evaluating a defense of qualified immunity, a district
court must first "decide whether the plaintiff alleged a violation
of a clearly established constitutional right." Cozzo v.
Tangipahoa Parish Council--President Government, 279 F.3d 273, 284
(5th Cir. 2002).  "A right is 'clearly established' if its contours
are 'sufficiently clear that a reasonable official would understand

that what he is doing violates that right.'" <u>Cozzo</u>, 279 F.3d at
284 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).
"Second, [the undersigned] must address whether the defendant's
'conduct was objectively reasonable in light of clearly established
law at the time that the challenged conduct occurred.'" <u>Id</u>.
(quoting <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 312 (5th Cir. 2001)).
"The defendant's acts are held to be objectively reasonable unless
all reasonable officials in the defendant's circumstances would
have then known that the defendant's conducted violated the
plaintiff's asserted constitutional or federal statutory right."
<u>Id</u>.  "[A]n individual defendant's subjective state of mind is
irrelevant to the qualified immunity inquiry."  <u>Id</u>

     Drawing all inferences in favor of the non-moving party, as
required on a motion for summary judgment, the factual background
of this lawsuit is as follows.  On March 11, 2005, the plaintiff
was driving south with her three children on U.S. Highway 61 in
Wilkinson County, Mississippi.  She was pulled over for reckless
driving by defendant Packnett, who was on duty and driving a blue
unmarked Suburban.  The following version of events is from the
plaintiffs' complaint:

     Plaintiff Bobbie Leigh Ellis pulled over to a closed
     service station and stopped.  When she exited the car,
     she saw Deputy Packnett walking briskly toward her
     pointing and yelling at her, telling Plaintiff she was
     speeding.  When said Plaintiff protested she was not
     speeding, Defendant Packnett screamed at her to shut up
     and told her "you don't tell me what to do."  Defendant
     Packnett then changed his mind and said, "ok, you were

driving reckless." There was no probable cause for the stop.

Defendant Packnett was so loud and verbally abusive initially that he upset the three minor Plaintiffs strapped into the automobile and caused them to begin to cry and shake with fear. Plaintiff Fredrick Wallace Ellis is an autistic child who became much more upset than his two siblings.

Defendant directed Plaintiff Bobbie Leigh Ellis to go into her vehicle and obtain her purse which held her driver's license. While leaning in the vehicle, Plaintiff Bobbie Leigh Ellis hesitated and tried to comfort her three children, especially Freddie, when for no reason whatsoever, Defendant Packnett walked up to the car, in the presence of the children, and demanded Bobbie Leigh Ellis get down out of the car and give Packnett her driver's license. When said Plaintiff asked for a second so she could calm down her children and tried to tell him that Fredrick was an autistic child who was very upset, Defendant Packnett grabbed Plaintiff's left arm and flung her back and slammed the car door in such a matter that it hit the child, Freddie. At that point, all the children began screaming in fear. Freddie started banging his head on the window glass of the car, and began rocking back and forth so hard you could actually see the car shaking, both of which are characteristic behaviors of an autistic child in a highly agitated state. Defendant Packnett continually refused Plaintiff's request that she be allowed to calm her children down.

At this time, Plaintiff Bobbie Leigh Ellis moved slightly toward the open door and again tried to calm her children when Deputy Packnett shoved said Plaintiff into the car door causing her to hit her face and chest on the frame of the door. Defendant Packnett then pulled out his handcuffs and told Plaintiff Bobbie Leigh Ellis that he was taking her to jail and she should shut up and turn around to be cuffed. Defendant Packnett denied said Plaintiff's request that she be allowed to either call someone to come take care of her children or stay with her children, telling her she was going to jail and her children would just have to survive. As said Plaintiff continued to protest about leaving her children unattended in an automobile parked just off U.S. Highway 61, Defendant Packnett became very angry and drew his

> service revolver from his holster and told the Plaintiff
> mother to shut up.  Defendant Packnett pointed his gun at
> said Plaintiff and told her to turn around.   Said
> Plaintiff then turned around and as she turned around
> Defendant Packnett slammed her face into the glass of the
> truck against the side of a door hinge, causing her
> glasses to fly off, cracking a molar and a crown and
> causing her to bleed.  Defendant Packnett also placed
> handcuffs on so tight that said Plaintiff screamed in
> pain.  Her hands immediately became numb.

Complaint, ¶¶ 11–14.

Ellis also recounts that a bystander, Vanessa Cage, whom Ellis knew, approached the children while Ellis was sitting in the patrol car, at which point Packett slammed the patrol car door on Ellis' leg.  Complaint, ¶ 15.  Ellis asked Cage to stay with her children while she was taken to the Wilkinson County jail.  Id.  Ellis also alleges that after this incident, "Defendant Packnett on several occasions made threatening and/or harassing gestures to Plaintiff Bobbie Leigh Ellis including one gesture simulating the firing of a pistol with his finger, increasing the fear and mental anguish of Mrs. Ellis even after the initial false arrest, beating and false imprisonment."  Id. at ¶ 21.

In his motion for partial summary judgment, Packnett contends that Ellis cannot maintain a § 1983 for unlawful arrest under the Fourth Amendment since he had probable cause to arrest her.  In support, he states the following:

> . . . During the traffic stop, Deputy Packnett obtained
> Mrs. Ellis' driver's license and requested that the
> dispatcher at the Wilkinson County Sheriff's Department
> run a check on the license.  Packnett Deposition, pp. 21–
> 24, 46–51.

7

Patricia Delaney, dispatcher for the Wilkinson County Sheriff's Department, performed the check of Mrs. Ellis' diver's license at approximately 3:05 p.m. on March 11, 2005, through the National Crime Information Center (NCIC) computer.  <u>See</u> Affidavit of Patricia Delaney, ¶ III.  The results of that check revealed that Mrs. Ellis' driver's license was suspended and, in conjunction with that suspended license, an arrest warrant had been issued.  Delaney Affidavit, ¶ III.

Ms. Delaney informed Deputy Packnett that Mrs. Ellis' driver's license was suspended and a warrant for Mrs. Ellis's arrest had been issued.  Delaney Affidavit, ¶ IV. With the information obtained from the NCIC search, Deputy Packnett advised Mrs. Ellis that her driver's license had been suspended.  Ellis Deposition, p. 73; Packnett Deposition, pp. 21-23.  Deputy Packnett then arrested Mrs. Ellis for driving with a suspended license. Packnett Deposition, pp. 55-56.

Defendant's Memorandum, p. 2.

Packnett argues that if probable cause exists, there can be no deprivation of constitutional rights.  In support, he cites <u>Miller v. City of Nichols Hills Police Department</u>, 42 Fed.Appx. 212 (10th Cir. 2002).  Defendant's Memorandum, p. 4.  In <u>Miller</u>, Officer Jennings, a City of Nichols Hill, Oklahoma, police officer, observed Miller's vehicle traveling ten miles over the speed limit with an expired license tag.  He radioed the police dispatcher and requested a check of the vehicle.  The dispatcher informed the officer that the vehicle's tag was reported by the National Crime Information Center (NCIC) computer as being from a stolen vehicle. The officer then initiated a felony stop of Miller's vehicle. <u>Miller</u>, 42 Fed.Appx. at 214.  Miller told the officer that the vehicle was not stolen.  The officer detained Miller while he

contacted the dispatcher again.  Upon learning from the dispatcher that the NCIC report was in error, he released Miller.  Id. at 215.

The next day, the City of Nichols Hills Police Department discovered the faulty NCIC report was the result of a statewide change in the NCIC response procedure.  The police department had not previously been informed of the change.  Id.  In addressing Miller's § 1983 claim for wrongful arrest, the Tenth Circuit found that Jennings had articulated, through undisputed testimony, three crimes he reasonably believed had been committed before he made the traffic stop: excessive speed, an expired tag, and the NCIC report that the vehicle was stolen.  Id. at 216.  The court found that it was objectively reasonable for Jennings to rely on the NCIC report, despite the later determination that it was faulty.  Id. (citing, inter alia, Duckett v. City of Cedar Park, 950 F.2d 272, 280 (5th Cir. 1992)(holding that an NCIC computer printout is sufficient to provide probable cause for an arrest)).

The Court agrees with the defendant that, as an isolated proposition, the NCIC report on Ellis' driver's license was sufficient to provide probable cause for an arrest.  However, unlike in Miller, Ellis was pulled over before the officer obtained the NCIC report.  Therefore, the sufficiency of the NCIC report does not speak to the question of whether a prior "arrest" occurred

before the formal arrest based on the NCIC report was made.[2]

The legality of a traffic stop is analyzed under the framework articulated in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  Under the two-part <u>Terry</u> reasonable suspicion inquiry, the court must determine whether the officer's action was (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place."  <u>Id</u>., at 19-20.

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.  <u>See</u> <u>United States v. Breeland</u>, 53 F.3d 100, 102 (5th Cir. 1995).

In this case, Packnett states, as his basis for forming a reasonable suspicion for the stop, that he observed the Ellis vehicle pass him at a high rate of speed just before reaching a portion of Highway 61 under construction.  The Ellis vehicle then attempted to pass a school bus directly in front of Packnett although the left lane was barricaded with barrels.  As a result, the school bus had to "jam on the brakes" and "almost take the curving of the road" to let Ellis into the right lane.  Deposition

_____

[2] The parties also dispute the sequence of events leading up to the formal arrest.  Packnett claims that he radioed the license number in and received the NCIC report information while at the scene of the initial stop.  Ellis contends that the information was neither requested nor received until she had been taken to the jail.

of O. J. Packnett, pp. 17-19.  Although this would be sufficient to
serve as the basis for a stop, the facts are <u>disputed</u> in this case,
unlike in <u>Miller</u>.  Ellis insists that she was not traveling at an
excessive speed and that she merged into the single lane of traffic
well before the barricades.  Deposition of Bobbie Ellis, pp. 80-85.

In making a reasonable suspicion inquiry, a court "must look
at the 'totality of the circumstances' of each case to see whether
the detaining officer has a 'particularized and objective basis'
for suspecting legal wrongdoing."  <u>United States v. Arvizu</u>, 534
U.S. 266, 273 (2002); <u>United States v. Cortez</u>, 449 U.S. 411, 417
(1981).  Reasonable suspicion exists when the officer can point to
specific and articulable facts which, taken together with rational
inferences from those facts, reasonably warrant the stop.  <u>See</u>,
<u>e.g.</u>, <u>United States v. Santiago</u>, 310 F.3d 336, 340 (5th Cir. 2002).
In evaluating the totality of the circumstances, a court may not
consider the relevant factors in isolation from each other.
<u>Arvizu</u>, 534 U.S. at 274.  However, it is clear that the officer's
mere hunch will not suffice.  <u>Terry</u>, 392 U.S. at 27.  It is also
clear that reasonable suspicion need not rise to the level of
probable cause.  <u>Arvizu</u>, 534 U.S. at 274.

The Court concludes that there are genuine issues of material
fact as to the reasonable suspicion issue.  Moreover, even if it is
determined that Packnett had a reasonable basis for the initial
stop, the plaintiffs could still prevail on their unlawful arrest

claim.  In that case, the issue is whether Packnett's subsequent actions, between the time of the stop (if found to be justified) and the time of the formal arrest (based on the NCIC computer report) were reasonably related to the circumstances that justified the initial stop.  United States v. Jenson, 462 F.3d 399, 403 (5th Cir. 2006).

The "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004)(en banc).  In the course of effectuating the stop, a police officer may permissibly examine the driver's licenses of the occupants and vehicle registration or rental papers and run a computer check on them to investigate whether the occupants have any outstanding warrants and if the vehicle is stolen.  Id. at 508.  An officer may also ask the occupants about the purpose and itinerary of their trip.  Id.  Indeed, the officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which Terry's second prong is aimed." Id.

However, if the totality of the circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the defendants must establish that the arrest is supported by probable cause.  United States v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11th Cir. 1986).  There is "no bright line rule for

12

determining when an investigatory stop crosses the line and becomes an arrest." United States v. Hatfield, 815 F.2d 1068, 1070 (6th Cir. 1987). In this case, Ellis alleges that Packnett manhandled her, hit one of her children with the car door, drew his firearm, and slammed her face into the window of her vehicle. Although police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations, in the absence of such circumstances the conduct complained of by Ellis would clearly fall outside the scope of a permissible stop. Thus, the Court finds that there are genuine issues of material fact regarding the unlawful arrest claim.

In addition, Packnett is not entitled to qualified immunity at this stage in the proceedings. Because there are material fact issues in dispute concerning the basis for Packnett's actions, those issues must be resolved before it can be determined if Deputy Packnett effected a constitutionally sound arrest and, if not, whether he was shielded with qualified immunity. See Lampkin v. City of Nacogdoches, 7 F.3d 430, 431 (5th Cir. 1993).

Packnett also moves for summary judgment on the plaintiffs' claim of abandonment. The plaintiffs' claim that Ellis' children were abandoned by Packnett is analyzed under the state-created danger doctrine. See Earnheart v. City of Terrell, 2005 WL 81724, *8 (N.D. Tex. Jan. 13, 2005)(citing Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198 (5th Cir. 1994)). The parties debate whether this doctrine, which has been discussed by the Fifth Circuit, has ever been adopted by the Fifth Circuit. However, this Court need

not resolve the issue, since in this case no injury was inflicted on the children by a third party.  See Earnheart, 2005 WL 81724 at *8 (citing Bright v. Westmoreland County, 380 F.3d 729, 737 (3rd Cir. 2004)(requiring that the "harm ultimately caused [be] foreseeable")).   Furthermore, there is no evidence that the children were actually abandoned, since Vanessa Cage was asked to take care of Ellis' children, and she did so.   Complaint, ¶ 15.  See Earnheart, 2005 WL 81724 at *8 (citing Bright, 380 F.3d at 737 (requiring that "the state [action be] in willful disregard for the safety of the plaintiff")).   The Court therefore finds that Packnett is entitled to summary judgment on the plaintiffs' claim of abandonment.

The plaintiffs also move to strike the affidavit of Patricia Delaney, a dispatcher for the Wilkinson County Sheriff's Department, on the grounds that it contains hearsay.   Delaney's affidavit recounts the conversation she had with Deputy Packnett, as well as the actions she took regarding the license check.   The statements are not hearsay.   See United States v. Carrillo, 20 F.3d 617, 619 (5th Cir. 1994)("out of court statements providing background information to explain the actions of investigators are not hearsay."); United States v. Londonido, 420 F.3d 777, 788-89 (8th Cir. 2005)(trial court properly allowed police officers to testify regarding statements made over radio by other officers, as statements were offered to show the reason for police actions).  The plaintiffs' motion to strike shall therefore be denied.

The plaintiffs' complaint also names Reginald Jackson,

individually and in his official capacity as Sheriff of Wilkinson County, and Wilkinson County, Mississippi, as defendants.  Sheriff Jackson and Wilkinson County have filed their present motion for summary judgment as to all claims against them.

In their complaint, the plaintiffs allege the following:

Soon after the arrest and beating, Defendant Wilkinson County Sheriff Reginald Jackson called Plaintiff Bobbie Leigh Ellis' husband and the father of the children, Charles Ellis, and set up a meeting with Mr. Ellis.  At said meeting, Defendant Reginald Jackson apologized for the actions of Deputy O. J. Packnett and told Mr. Ellis that although he suspected that Deputy Packnett may not be psychologically fit for duty on the street, his department could not afford a psychologist to determine if Defendant Packnett was in fact psychologically fit for street duty.  The Sheriff also said he would have the tickets dismissed.  Defendant Jackson also noted he had previously informed his Deputies that the circumstances presented by Plaintiff's arrest, a suspended license, warranted only a ticket, particularly where children were involved, and not incarceration.  Defendant Jackson further promised Mr. Ellis that Defendant Packnett would not further harass any members of Mr. Ellis' family.  However, after that representation, Defendant Packnett on several occasions made threatening and/or harassing gestures to Plaintiff Bobbie Leigh Ellis including one gesture simulating the firing of a pistol with his finger, increasing the fear and mental anguish of Mrs. Ellis even after the initial false arrest, beating and false imprisonment.

Complaint, ¶ 21.  Elsewhere, the plaintiffs allege:

Sheriff Reginald Jackson, as the chief law enforcement officer of Wilkinson County, Mississippi, was aware of Deputy Packnett's prior acts of illegal arrests and excessive force and violence after traffic stops and after other misdemeanor arrests resulting in injury to third parties.  The said series of illegal arrests, and excessive force for alleged misdemeanor violations were proximately caused by the Defendant Jackson's failure to train and supervise.  The Sheriff failed to supervise and train the subordinate official, Defendant Deputy Sheriff Packnett; there is a causal link between the failure to train and supervise and the violation of Plaintiffs' constitutional rights and damage and the failure to train

15

and supervise amounts to deliberate indifference to the
rights of the Plaintiffs in this lawsuit.  From the
pattern of illegal arrests and excessive force exhibited
by Defendant Packnett prior to the arrest of the
Plaintiff and the beating without any justification by
the Plaintiff, the Sheriff Defendant Reginald Jackson was
aware of facts for which an inference could be drawn that
there was a substantial risk of serious harm to the
Plaintiffs.  The inadequacy of training and supervision
was obvious and obviously likely to result in a
constitutional violation such as the injuries to the
Plaintiffs in this lawsuit.

Complaint, ¶ 24.

Sheriff Jackson is sued in both his individual and official

capacities.  To establish personal liability on the part of Sheriff

Jackson, the plaintiffs "must allege specific facts of personal

involvement in, or direct responsibility for, a deprivation of

[their] constitutional rights." Clemmons v. Armontrout, 477 F.3d

962, 967 (8th Cir. 2007)(citation and internal quotation marks

omitted).  The sheriff's general responsibility for supervising the

operations of his department is insufficient to establish personal

involvement.  Id.  In this case, the plaintiffs do not allege

personal involvement or direct responsibility on the part of

Sheriff Jackson.  His motion for summary judgment in his individual

capacity is therefore well taken.

As for the plaintiffs' claims against Sheriff Jackson in his

official capacity, suits against governmental officers or employees

in their official capacity are, in reality, suits against the

entity that the officer or employee represents.  See Monell v.

Dept. of Soc. Serv., 436 U.S. 658, 690 n.55 (1978)(official

capacity suits "generally represent only another way of pleading an

action against an entity of which an officer is an agent."); Kentucky v. Graham, 473 U.S. 159, 167 (1985)("a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."). Therefore, the plaintiffs' claims against Sheriff Jackson in his official capacity are claims against Wilkinson County, and in this portion of the opinion, the movants will be collectively referred to as "Wilkinson County."

Under 28 U.S.C. § 1983, the United States Supreme Court has held that the liability of a government entity, based on the actions of its officials, "exists only where it can be shown that the officials acted in accordance with an official government policy or firmly entrenched custom." Monell v. City of New York Dep't of Social Servs., 436 U.S. 658, 694 (1978). A government entity cannot be liable under § 1983 pursuant to the theory of respondeat superior liability alone. City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988). Nor can it be held liable pursuant to § 1983 solely because it employs a tortfeasor. Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998); Monell, 436 U.S. at 691. Thus, to hold Wilkinson County liable under § 1983 for the actions of its officials, the plaintiffs must prove their injuries were proximately caused by either: (1) an official policy of the county, (2) the edicts and acts of a final policymaker, which can fairly be said to represent official county policy, or (3) the widespread practice of the county that is so permanent and well settled as to constitute a "custom" or written

law.  _Monell_, 436 U.S. at 694; _see_ _also_ _Praprotnik_, 485 U.S. at 127.

In the Fifth Circuit, "[p]roof of government entity liability sufficient to satisfy _Monell_ requires: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)."  _Pineda v. City of Houston_, 291 F.3d 325, 328 (5th Cir. 2002).  "[A] plaintiff must ... demonstrate a direct causal link between the [government entity's action] and the deprivation of federal rights."  _Bd. of County Comm'r v. Brown_, 520 U.S. 397, 404 (1997).  In _Pineda_, the Fifth Circuit stated that to prove liability of a government entity "in the absence of a 'smoking gun,'" there are two paths of proof:

1.  A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

_Pineda_, 291 F.3d at 328 (citing _Webster v. City of Houston_, 735 F.2d 838, 841 (5th Cir. 1984)).

Therefore, for the plaintiffs to prevail on their _Monell_

claims against Wilkinson County, they must prove that their constitutional rights were violated by a county employee's conduct, and that the conduct occurred because of: (1) an official policy statement, ordinance or regulation of Wilkinson County, or (2) a widespread practice or custom of Wilkinson County. See Praprotnik, 485 U.S. at 122 ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). To prove the existence of a custom, the plaintiffs must show a "persistent and widespread practice" of Wilkinson County employees inflicting, on other occasions, the specific constitutional violations that they allege. "[O]ne act is not itself a custom." Pineda, 291 F.3d at 329 (citing Piotrowski v. City of Houston, 237 F.3d 567, 581 (5th Cir. 2001).

The plaintiffs allege the following:

> Sheriff Reginald Jackson has instituted a policy whereby when arrests are made of adults driving automobiles, young children riding with these adults are left abandoned in automobiles while the adult having been arrested is transported to jail.

Plaintiffs' Brief, p. 1. However, as previously found by the Court, the plaintiffs have failed to present any summary judgment evidence that the children in this case were in fact abandoned. Therefore, even if the plaintiffs could establish that Sheriff Jackson had instituted a policy or custom of abandoning children by the side of the road after traffic stops, they could not show that such policy or custom caused a constitutional violation in this instance. To establish liability on the part of Wilkinson County

19

under § 1983, the plaintiff must "(1) identify the challenged policy or custom, (2) attribute it to the [county], and (3) show a causal connection between the execution of that policy and the injury suffered." Mariani v. City of Pittsburgh, 624 F.Supp. 506, 509 (W.D. Pa. 1986) (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 830 (1985)).  In other words, "the official policy must be 'the moving force of the constitutional violation.'" Dodson, 454 U.S. at 325 (quoting Monell, 436 U.S. at 694).

Apart from allegations regarding abandonment of children, the plaintiffs' complaint contains claims against Deputy Packnett for unlawful arrest and excessive force.  These claims survived Packnett's motion for summary judgment.  In addition, the complaint alleges that Sheriff Jackson, "as the chief law enforcement officer of Wilkinson County, Mississippi, was aware of Deputy Packnett's prior acts of illegal arrests and excessive force," and that Sheriff Jackson failed to train and supervise Packnett, resulting in the violation of the plaintiffs' constitutional rights and damages.  Complaint, ¶ 24.

The Supreme Court has held that "failure to train" claims are cognizable under § 1983.  See City of Canton v. Harris, 489 U.S. 378 (1989); Oklahoma City v. Tuttle, 471 U.S. 808 (1985).  To prevail on such a claim, the plaintiff must prove that the county's failure to train resulted from deliberate indifference by the county (or its policymakers) to the rights of the citizens with whom the officers regularly interact.  Harris, 489 U.S. at 389. "To satisfy the deliberate indifference prong [in a failure to

train case], a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" <u>Cousin v. Small</u>, 325 F.3d 627, 637 (5th Cir. 2003), <u>quoted in</u> <u>Estate of Davis v. City of North Richland Hills</u>, 406 F.3d 375, 381 (5th Cir. 2005).  The plaintiff must also prove the existence of a direct causal link between the inadequate training and the plaintiff's constitutional deprivation.  <u>Harris</u>, 489 U.S. at 385-86.

The defendants' motion for summary judgment asserts that "[p]laintiffs have no evidence of a propensity to commit constitutional violations by Deputy Packnett; of the Sheriff's knowledge of any such propensity; or of any specific deficiencies in the County's training or supervision of its sheriff's deputies ...."  Defendants' Motion for Summary Judgment, p. 2.

The plaintiffs allege specific deficiencies in Packnett's training, i.e., failure to train regarding use of excessive force and proper arrest procedures during traffic stops.  The plaintiffs have submitted evidence of prior incidents involving Deputy Packnett which are similar, in varying degrees, to the incident complained of in this case.  Deposition of Amy Rene Bell Greer; Deposition of John Roland White; Deposition of Jewell Jack Darden; Deposition of Emily Holliday Lewis.  It is also alleged that Sheriff Jackson was directly notified of three of these incidents. Greer Depo.; White Depo.; Lewis Depo.  Furthermore, a single constitutional violation can provide the basis for municipal liability for failure to train, <u>Bd. of County Comm'rs v. Brown</u>, 520

U.S. 397, 407-09 (1997), where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." Harris, 489 U.S. at 391.

The plaintiffs' evidence is sufficient to create a genuine issue of material fact. Whether the evidence proffered is sufficient to establish a policy of deliberate indifference to the plaintiffs' constitutional rights is dependent upon the testimony introduced at trial. Moreover, the causal connection between any training deficiency and any constitutional injury to the plaintiffs is a question of fact to be determined through trial. Thus, the motion for summary judgment shall be denied as to claims against Wilkinson County and Sheriff Jackson in his official capacity.

The defendants move to exclude the depositions of John Roland White, Jewel Jack Darden, Emily Holliday Lewis, and Amy Rene Bell Greer, on the basis that the incidents described therein are not sufficiently similar to the allegations of the plaintiffs in this case. "To be sufficiently similar, 'other crimes' evidence in a lawsuit alleging excessive force by law enforcement officers must typically have at least some bearing on how an officer has treated other detainees while carrying out his duties; evidence describing an ill temper alone will not suffice." Mazloum v. Dist. of Columbia Metro. Police Dept., 2007 WL 1141581 (D. D.C. April 17, 2007)(citing Carson v. Polley, 689 F.2d 562, 573-74 (5th Cir. 1982)). For summary judgment purposes, the Court finds that the evidence is sufficiently similar to show the existence of a genuine issue of material fact; however, the record is not sufficiently

developed so that the Court can determine whether the sheriff had actual or constructive knowledge of the use of excessive force, see Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984), or whether there was "a history of widespread abuse, thereby imputing knowledge of such abuse to supervisory personnel." Wellington v. Daniels, 717 F.2d 932, 935 (4th Cir. 1983).  See also Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir. 1984)(district court "erred in refusing to allow plaintiffs to attempt to prove other similar incidents of the use and toleration of excessive force by city policymakers in meeting the burden of showing that the custom asserted was 'persistent,' 'widespread,' 'common,' and 'well settled.'").  Accordingly,

IT IS HEREBY ORDERED that the defendant O. J. Packnett's Motion for Partial Summary Judgment **(docket entry 66)** is GRANTED as to the plaintiffs' claim for abandonment, and DENIED as to the plaintiffs' claim for unlawful arrest;

FURTHER ORDERED that the plaintiffs' motion to strike the affidavit of Patricia Delaney **(docket entry 91)** is DENIED;

FURTHER ORDERED that the defendants Reginald Jackson and Wilkinson County's Motion for Summary Judgment **(docket entry 68)**, is GRANTED as to all claims against Sheriff Jackson in his individual capacity, and DENIED as to the remaining claims;

FURTHER ORDERED that the defendants Reginald Jackson and Wilkinson County's Motion in Limine to Exclude Evidence Regarding Prior Incidents Involving O.J. Packnett **(docket entry 62)**, which

the Court treats as a motion to exclude evidence for summary judgment purposes, is DENIED;

SO ORDERED, this the ___10th___ day of September, 2007.


_____s/ David Bramlette_____
UNITED STATES DISTRICT JUDGE